JAMES H. POTTER, JR., JAMES H. POTTER, III, AND GILBERT M. POTTER, T/A AND D/B/A POTTER'S STORE, A PARTNERSHIP; AND NEW HAMPSHIRE INSURANCE COMPANY, A CORPORATION *v.* CAROLINA WATER COMPANY, A CORPORATION.

(Filed 12 October, 1960.)

**1. Municipal Corporations § 18:    Negligence § 1:    Contracts §§ 14, 15—**

A property owner whose property is damaged as a result of the breach by a private water corporation of its contract to supply water to the municipality for fire protection may maintain an action against the water company either as the third party beneficiary of the contract or for negligent failure of the water company to comply with the contract, certainly when the contract does not exclude such liability and the language of the contract discloses that the parties were advertent to such liability under the prior decisions of the Court.

**2. Appeal and Error § 61—**

The doctrine of *stare decisis* requires in the interest of sound public policy that the decisions of a court of last resort affecting vital business interests and social values, deliberately made after ample consideration, should not be disturbed except for most cogent reasons.

**3. Municipal Corporations § 18:    Negligence § 1:    Contracts §§ 14, 15— Contract to furnish water for fire protection contemplates that supply and pressure of water should be reasonably sufficient to accomplish its purpose.**

The fact that a contract between a private water company and a municipality to maintain fire hydrants within the municipality fails to stipulate an expiration date or to specify the quantity of water to be furnished or the pressure to be maintained does not render the contract too indefinite to support recovery by a citizen for private damages resulting from its breach when both parties to the contract recognized it as a continuing one and in force at the time of the fire, and when the language of the contract and the order of the Utilities Commission approving the application of the parties for the sale of the franchise to the water company disclose that the water company was to provide water for fire protection, it being presumed that the parties contemplated that the water company would exercise reasonable care to provide such water supply and pressure as might be reasonably necessary to accomplish the purpose of the contract.

**4. Same—**

Where a contract between a municipality and a water company provides that the water company should not be liable for any failure or neglect to supply service by reason of strike or accident beyond its control, the burden is upon the water company to prove that its failure to provide service as contemplated by the contract was due to either of these grounds.

APPEAL by defendant from *Paul, J.,* May Civil Term, 1960, of CARTERET.

Plaintiffs seek to recover from defendant the value of their stock of merchandise and fixtures destroyed by fire.

Plaintiffs in brief allege: Tide Water Power Co. and the City of Beaufort, on 13 November 1931, entered into a contract which provided:

"The parties hereto for and in consideration of the mutual covenants herein contained, do mutually agree as follows:

"FIRST: The party of the first part will furnish and maintain for the use of the party of the second part ........ fire hydrants of the type now installed in the above town, at the price of THIRTY DOLLARS ($30.00) per hydrant per year.

"SECOND: During the term hereof the party of the first part will furnish at the rate of THIRTY DOLLARS ($30.00) per hydrant per year additional hydrants of a similar size and type to those now installed, provided that the party of the first part shall not be required to furnish any additional hydrants other than at the then existing six inch or larger water mains of the Company. However, the party of the first part would extend its water main a .distance of three hundred (300) feet for each additional hydrant contracted for by the party of the second part at the above unit price per hydrant, and under the terms and conditions of this contract.

"THIRD: The party of the first part will move and replace at new locations for the party of the second part, at its direction, any and all hydrants from one location to another for the actual cost thereof.

"FOURTH: The party of the second part agrees to use for the term of this contract the hydrants hereinabove specified and to pay therefor at the rates and in the manner above set forth.

"FIFTH: The party of the first part shall not be liable for any failure or neglect to supply service to the said hydrants by reason of strike or accident beyond its control.

"SIXTH: Water will be supplied to the flush tanks at the rate of FIFTY DOLLARS ($50.00) per tank per year and the company reserves the right to check the amount of water used by such tanks and in case of excessive amount of water being used, they shall be promptly adjusted.

"SEVENTH: Water used by the Municipality in excess of the present normal requirements shall be paid for at the rate of 20 cents per thousand gallons.

"This agreement shall be binding upon the successors and assigns of the parties hereto and may be renewed by mutual agreement."

Tide Water Power Co. and Carolina Power & Light, Co. merged. Following the merger, Carolina Power & Light supplied water in conformity with the terms of the contract. On 30 June 1954 Carolina Power & Light sold to defendant its water properties used to perform its contractual obligations to Beaufort. Thereupon defendant assumed the contractual obligations originally imposed on Tide Water Power Co. This sale and assignment was approved by the Utilities Commission of North Carolina upon joint application of defendant and Beaufort. Plaintiffs' place of business is on Front Street in Beaufort. It adjoins House's Drug Store. On the night of 11 December 1958 fire broke out in the furnace room of the drug store. An alarm was sounded. The fire department responded promptly. Fire engines were coupled to hydrants and adequate pressure was supplied to fight the fire for a short time. When the fire was almost extinguished and could have been extinguished if pressure had been maintained, defendant negligently failed to maintain the pressure or to supply any water, thus negligently failing to comply with its contract. This negligent failure to supply water left the fire department without means to control the fire, and as a natural and proximate result the fire increased in intesity and spread to and destroyed the property of plaintiffs.

Defendant answered and admitted the execution of the contract by Beaufort and Tide Water Power. It admitted the merger of Tide Water and Carolina Power & Light and the assumption by Carolina Power & Light of the contract obligations of Tide Water. It admitted that it undertook to furnish water service to Beaufort in accordance with the terms of the contract between Tide Water Power and Beaufort dated 13 November 1931. It denied it negligently failed to furnish water, and denied that plaintiffs had a right under the contract to maintain an action against it either for breach of contract or in tort.

Plaintiffs' evidence (defendant offered none) tends to show a fire alarm was sounded about 11:55 p.m.; the fire department promptly responded with adequate fire-fighting equipment; one of the engines responding carried a water tank containing 500 gallons; this water was used in an effort to extinguish the fire; another engine was coupled to a hydrant some 250 feet away from the burning building; water hose was then laid to the fire; a hose from the first engine was coupled to another hydrant some 250 feet away; both engines were pumping and had an adequate supply of water for some thirty to forty minutes, or more, at which time the fire was under control

and could have been extinguished if the water supply had continued to the hydrants; suddenly and without warning there was a total failure of water supply; this failure related not only to the hydrants to which the engines were coupled but to the water outlets in other parts of Beaufort; the fire department was without water pressure for a period variously estimated by witnesses at some thirty minutes to one and one-half hours; when water again came to the hydrants, the building occupied by plaintiffs was on fire; it was then impossible to save the building or its contents.

To determine liability, the court submitted to the jury issues which were answered as follows:

"1. At the time of the damage to and destruction of plaintiff's property by fire on the night of December 11, 1958, had defendant, Carolina Water Company, contracted and agreed to furnish to the Town of Beaufort, a supply of water and service to the fire hydrants within said Town of Beaufort?

"Answer: Yes.

"2. Did the defendant on the night of December 11, 1958, at the time of said fire, fail and neglect to furnish water to said fire hydrants within the Town of Beaufort as it had agreed to do?

"Answer: Yes.

"3. If so, was plaintiffs' stock of merchandise and fixtures damaged or destroyed by the negligence of the defendant as alleged in the complaint?

"Answer: Yes.

"4. If so, what amount are plaintiffs entitled to recover as damages to their stock of merchandise?

"Answer: $10,000.00.

"5. If so, what amount are the plaintiffs entitled to recover as damages to their fixtures and furnishings?

"Answer: $5,000.00."

Judgment was entered on the verdict and defendant excepted.

*C. R. Wheatly, Jr., and Thomas S. Bennett for plaintiff appellees.*
*John G. Dawson, Albert W. Cowper, and Luther Hamilton for defendant, appellant.*

RODMAN, J. Defendant, by motion to nonsuit and by exception to the charge as a whole, challenges plaintiffs' right to recover notwithstanding the undisputed testimony that there was a total failure to furnish any water to the hydrants during the critical period, and because of such failure plaintiffs' property was destroyed. It bases its denial of liability on two propositions: (1) Breach of a definite and

specific contract between a private corporation and a municipality to furnish water for fire purposes creates no right of action in a citizen who suffers damage as a result of such breach; (2) even if such right of action may exist for breach of a contract definite and specific in its terms, the contract on which plaintiffs base their claim is so indefinite and uncertain that plaintiffs' evidence fails to establish a breach.

Counsel for defendant open their argument with the statement: ". . . the question here directly presented is almost a brand new question in this state to the present generation of lawyers." They then concede that the question which they first pose for determination was decided adversely to their contention in *Gorrell v. Water Co.*, 124 N.C. 328, decided at the Spring Term 1899, followed by *Fisher v. Water Co.*, 128 N.C. 375, decided at the Spring Term 1901 (See *Guardian Trust & D. Co. v. Fisher*, 200 U.S. 57, 50 L. Ed. 367), *Jones v. Water Co.*, 135 N.C. 553, decided at the Spring Term 1904, s.c. 138 N.C. 383, *Morton v. Water Co.*, 168 N.C. 582, 84 S.E. 1019, decided at the Spring Term, 1915, and *Powell v. Water Co.*, 171 N.C. 290, 88 S.E. 426, decided at the Spring Term, 1916, all holding that a citizen injured by breach of a contract by a private corporation to supply water to his municipality for fire protection might maintain an action for damages personal to him resulting from a breach of the contract, and he might sue for a breach of the contract or for a. negligent failure to comply with the contract.

Counsel for defendant urge us to now overrule those cases and to hold that no such action may be maintained. True, as defendant points out, the *Gorrell* case was decided by a divided Court, but Gorrell was unanimously accepted as the law of this State in *Fisher* and *Jones*.

In 1915 this Court was asked to re-examine the question and to join with the majority of the states in holding that property owners have no right of action because of a breach of such contract. *Morton v. Water Co., supra.* That the question again propounded was carefully considered is manifest from the several opinions and an inspection of the cases cited in the opinions of *Justice Allen*, who spoke for the majority, and *Justice Walker*, who spoke for the minority. An examination of the cases there cited will disclose that North Carolina, Kentucky, and Florida were in accord, and the decisions in other states were to the contrary. Kentucky and Florida continue to adhere to the rule as declared by us in the *Gorrell* case. See *Clay v. Catlettsburg, Kenova & Ceredo Water Co.*, 192 S.W. 2d 358; *Florida Public Utilities v. Wester*, 7 So. 2d 788.

The *Morton* case was followed a year later by *Powell v. Water Co., supra,* where the right to sue was again recognized.

It is manifest from the decision in the *Morton* case that the doctrine of *stare decisis* played an important part. *Allen, J.,* said: "Another reason for refusing to sustain the position of the defendant is that it entered into the contract with the city of Washington in 1901, two years after the *Gorrell* case, *supra,* was decided, and as all laws relating to the subject matter of a contract enter into and form a part of it as if expressly referred to or incorporated in its terms (citations), it was within the contemplation of the parties at the time the contract was made that the defendant would be liable to the citizen for loss by fire caused by its negligent failure to perform the terms of the contract, as held in the *Gorrell* case, *supra,* and the hold otherwise now would relieve the defendant of a responsibility which it knowingly affirmed."

*Brown, J.,* concurring in the result, said: "I recognize the fact that the overwhelming weight of authority, including that of the Supreme Court of the United States, is against the decisions of this Court in the *Gorrell, Fisher,* and *Jones* cases, *supra,* cited in the opinions in this case. But all three of those cases were decided and the opinions published before the contract in this case was entered into. Those decisions were well known to be the law of North Carolina when the franchise given to the defendant was applied for, and when it was agreed upon and its terms accepted.

"Whether those cases were correctly decided or not, they were the accepted law of this State at that time, and upon well established priciples entered into and formed a part of the contract under which the defendant operated, unless there is something to be found in the contract excluding such hypothesis."

The conclusion reached in the cases we are now asked to overrule has not been challenged for nearly half a century. To the contrary, the priciples enunciated have been repeatedly approved. Illustrative, see Shepard Citations for the cases citing with approval the *Gorrell* case. See also *Pinnix v. Toomey,* 242 N.C. 358, 87 S.E. 2d 893; *Council v. Dickerson's, Inc.,* 233 N.C. 472, 64 S.E. 2d 551; *Jones v. Elevator Co.,* 231 N.C. 285, 56 S.E. 2d 684.

The reasons why a court should adhere to conclusions deliberately reached in prior cases was well stated by *Johnson, J.,* in *Williams v. Hospital,* 237 N.C. 387, 75 S.E. 2d 303: "The salutary need for certainty and stability in the law requires, in the interest of sound public policy, that the decisions of a court of last resort affecting

vital business interests and social values, deliberately made after ample consideration, should not be disturbed except for most cogent reasons." *Ward v. Cruse,* 234 N.C. 388, 67 S.E. 2d 257; *S. v. Dixon,* 215 N.C. 161, 1 S.E. 2d 521; *Wilkinson v. Wallace,* 192 N.C. 156, 134 S.E. 401; *Fowle v. O'Ham,* 176 N.C. 12, 96 S.E. 639; *Hill v. R. R.,* 143 N.C. 539.

The contract here under consideration bears evidence, we think, that Tide Water and Beaufort were advertent to and recognized the rule in the *Gorrell* and other cases which followed. The contract provides: "The party of the first part shall not be liabile for any failure or neglect to supply service to the said hydrants by reason *of strike or accident beyond its control."* (Emphasis supplied.) Here was apparently a recognition of the water company's right as declared by *Brown, J.,* in *Morton v. Water Co., supra.* He said: "It could easily have been made to appear from the contract, if such was the agreement of the parties, that the defendant was dealing exclusively with the city, and was accountable only to it." Had it been the intent of the parties to the contract under consideration to deny a right of action to a property owner injured by failure to furnish water for fire protection, more inclusive language would have been chosen.

We are not justified, under the facts here presented, in reversing the rulings made in *Gorrell v. Water Co., supra; Morton v. Water Co., supra* and *Powell v. Water Co., supra.*

Is the contract so indefinite that the intent and agreement of the parties cannot be determined?

Certainly failure to include a date on which the contract would expire cannot relieve defendant of the duty to comply so long as it recognizes the contract as a continuing one. Defendant might have the right to terminate upon reasonable notice, *Fulghum v. Selma,* 238 N.C. 100, 76 S.E. 2d 368, but defendant did not defend on the ground that the contract was not in force at the time of the fire. To the contrary, the evidence tended to establish that the parties thereto recognized the contract as being in effect.

Defendant's contention that the contract does not show an agreement on its part to provide water for fire protection is, we think, without merit. True the contract does not in express language so provide, nor does it prescribe the quantity of water to be furnished or the pressure to be maintained. It does, however, obligate defendant to furnish and maintain "fire hydrants." It obligates Beaufort to use and pay the rental fixed for the hydrants furnished. It exculpates defendant from liability for failure "to supply service to the said

hydrants by reason of strike or accident beyond its control." The order of the Utilities Commission, based on the joint application of Beaufort and defendant seeking approval of the sale by Carolina Power & Light and rates to be charged, provided.: "Water in excess of present ordinary city's requirements for flushing sewers, streets, *and fire protection* to be metered and billed." (Emphasis supplied.) It is, we think, apparent that the parties contemplated that defendant would exercise reasonable care to provide such water supply and pressure to the hydrants as might be reasonably necessary to accomplish the purpose for which the contract was made, that is, to furnish fire protection to property in Beaufort.

The agreement to provide and maintain the fire hydrants is analagous to a sale of an article by a manufacturer for a particular purpose, that is, to provide fire protection. Such sale imposes an obligation to provide an article reasonably suitable for the purpose for which it is purchased. *Lumber Co. v. Chair Co.*, 250 N.C. 71, 108 S.E. 2d 70; *Stokes v. Edwards*, 230 N.C. 306, 52 S.E. 2d 797. The rule finds a parallel in contracts for services. *Hazelwood v. Adams*, 245 N.C. 398, 95 S.E. 2d 917; *Hagan v. Jenkins*, 234 N.C. 425, 67 S.E. 2d 380; *Ivey v. Cotton Mills*, 143 N.C. 189; Annotations to *Robertson v. Wolfe*, 49 A.L.R. 473; 35 Am. Jur. 530.

The Court of Appeals of Kentucky said with respect to a similar situation: "When a public service corporation such as a gas company obtains the privilege of occupying and using the streets for a particular public service that will be beneficial to the people of the city, and there is no express contract between it and the city defining its duties and obligations, the law will raise an implied and enforceable contract to take the place of the omitted express contract, and impose on the company the obligation to render the service that was reasonably within the contemplation of the parties when the contract was made." *Humphreys v. Central Kentucky Natural Gas Co.*, 190 Ky. 733, 21 A.L.R. 664.

Plaintiffs have stated a cause of action based on the negligent failure to reasonably comply with its contract. The total failure to furnish water under the existing conditions for a period of time variously estimated at from thirty minutes to one and one-half hours is sufficient to support a finding of negligence. The court placed the burden of establishing negligence on plaintiffs. Defendant took no exception to this portion of the charge. It has neither pleaded nor offered evidence that its failure to perform was due to a strike or accident. To exculpate itself on either of these grounds, it would carry the

burden of proof. *Fallins v. Insurance Co.*, 247 N.C. 72, 100 S.E. 2d 214; *Thomas-Yelverton Co. v. Insurance Co.*, 238 N.C. 278, 77 S.E. 2d 692; *Wells v. Clayton*, 236 N.C. 102, 72 S.E. 2d 16; *Jones v. Waldroup*, 217 N.C. 178, 7 S.E. 2d 366; *Steamboat Co. v. Transportation Co.*, 166 N.C. 582, 82 S.E. 956.

The other assignments of error have been examined. We find nothing to indicate prejudicial error. None is of sufficient importance to require discussion.

No error.